# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

      Plaintiff,

vs.                                                                  No. CIV 04-0997 JB/DJS

ESTATE OF ERIC TOLLARDO,
SAMUEL L. VALDEZ, ROSE
VALDEZ, AND PHOENIX INDEMNITY
INSURANCE COMPANY,

      Defendants.

Consolidated with

DAIRYLAND INSURANCE COMPANY,

      Plaintiff,

vs.                                                                  No. CIV 04-1120 JB/DJS

RED EAGLE and/or STEPHANIE RAEL,
Individually and as Personal Representative
of the Estate of ALFREDO LITTLE
EAGLE RAEL, Deceased, JOHN DOE,
Personal Representative of the Estate of
ALFREDO LITTLE EAGLE RAEL,
Deceased, and JASON PEREA,

      Defendants.

## MEMORANDUM OPINION

    **THIS MATTER** comes before the Court on the Motion to Dismiss, filed December 6, 2004

(Doc. 4 in Case No. 04cv1120).[1] The Court held a hearing on this motion on October 27, 2005.[2] The Court entered an Order denying the motion on October 29, 2005. In footnote 1 of that Order, the Court promised to issue a memorandum opinion explaining the reason for its decision to deny the motion.

## **FACTUAL BACKGROUND**

The Court obtains the following description of the case's facts from the parties' motions for summary judgment. Following a series of increasingly violent confrontations between Jason Perea, a drug dealer in Taos, New Mexico, and Eric Tollardo, a high ranking official in the Bario Small Town gang, Perea went looking for Tollardo to beat him up. See Deposition of Jason Perea at 6:25-8:5, 15:18-19, 17:15-19 (taken March 11, 2005)(hereinafter "Perea Depo."); Deposition of Charlie Martinez at 12:18-21 (taken March 9, 2005)(hereinafter "Martinez Depo."). After driving around Taos for several hours in his uninsured 1992 Silverado truck, Perea found Tollardo, sitting in a blue 1992 Ford Taurus, as Perea drove by a Mustang gas station. See Perea Depo. at 16:5-11, 49:8-11, 54:2-9. Unable to slow down in time to enter the gas station, Perea's truck jumped over a curb and collided with a pole. See id. at 16:12-24. Perea left his truck, ran across the Mustang's parking lot with a gun in each hand, and let loose a fusillade of bullets into the blue car, killing Tollardo and two other occupants of the car. See id. at 16:25-17:3, 26:23-27:9, 46:1-3; Martinez Depo. at 5:16-6:6. Perea eventually pled guilty to first degree murder for the deaths of Alfredo Little Eagle Rael and

---

[1] Unless otherwise stated, all document numbers refer to documents filed in Case No. 04cv1120.

[2] The Defendants were late to the hearing. See Transcript of Hearing at 2:9-15 (taken October 27, 2005). The Defendants did not appear at the hearing until after the Court heard and ruled on this motion. See id. at 6:24-7:23, 9:1-11.

Nathaniel Maestas, and second degree murder for Tollardo's death. See Memorandum of Law in Support of Motion to Dismiss ("Rael Memorandum") at 2, filed December 6, 2004 (Doc. 4).

Stephanie Rael, Rael's mother, owned the car in which these three people died. See Deposition of Stephanie Rael at 8:3-5, 27:24-28:1 (taken August 18, 2005)(hereinafter "Rael Depo."). Dairyland Policy #NM294208317, issued to Stephanie Rael by Dairyland Insurance Company, insured the Taurus. See Memorandum Opinion and Order at 6, filed November 15, 2005 (Doc. 67 in Case No. 04cv997). In the policy, Dairyland promises

> to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury you suffer in a car accident while occupying a car or, as a pedestrian, as a result of having been struck by an uninsured motor vehicle.

Id.

## PROCEDURAL BACKGROUND

On October 1, 2004, Dairyland filed a Complaint for declaratory relief in the United States District Court for the District of New Mexico, asking the Court to declare that the uninsured motorist provision of the insurance policy issued to Stephanie Rael does not apply to Rael's death. See Complaint at 4, filed October 1, 2004 (Doc. 1). Dairyland also requested that the Court find that its denial of coverage was not in bad faith and did not violate New Mexico law. See id. The Court consolidated this case with Hartford Insurance Company of the Midwest v. Estate of Eric Tollardo, No. 04cv997 (D.N.M.), on January 27, 2005, upon motion of all the parties. See Order of Consolidation at 1, filed January 27, 2005 (Doc. 10).

The Defendants filed a Complaint in New Mexico State District Court against Dairyland and Perea on October 28, 2004. The Defendants asserted claims against Dairyland for breach of contract,

bad faith and breach of implied duty of good faith and fair dealing, and violations of the Unfair Claims Practices Act. See New Mexico State District Court Complaint ¶¶ 15-39, at 3-9.

On December 6, 2004, the Defendants filed a motion to dismiss in the federal action on the grounds that: (i) Dairyland failed to name indispensable parties, specifically Maestas, Tollardo, and Cassandra Martinez, to this action; (ii) the Court should abstain from deciding the federal suit because of the pending state action; and (iii) the Court should decline to exercise its authority to hear this case under the Declaratory Judgment Act.[3] See Rael Memorandum at 13-25. Dairyland responds that the exercise of jurisdiction under the Declaratory Judgment Act "will further the dual goals of clarifying and/or settling the legal relations at issue and terminating, and/or affording relief from the uncertainty which has given rise to this proceeding." Response to Defendants' Motion to Dismiss ("Response") at 7, filed December 23, 2004 (Doc. 8). Dairyland further maintains that Maestas, Tollardo, and Martinez are not indispensable parties to this action because the Court can grant complete relief without their presence in this suit, none of these three has an actual interest in this action, and neither party will be subject to multiple or inconsistent obligations in the absence of their participation in this case. Id. at 16.

---

[3] In their motion, the Defendants state that "there is an issue of jurisdictional amount." Motion to Dismiss at 1. In their Memorandum of Law in Support of Motion to Dismiss, the Defendants do not explicitly spell out the basis for this argument. See generally Rael Memorandum. Conducting its own analysis, the Court concludes that diversity subject-matter jurisdiction exists. The Court notes that the parties are diverse in citizenship: Dairyland is a Wisconsin corporation with its principal place of business in Wisconsin, while Stephanie and Red Eagle Rael are citizens of New Mexico. See Complaint ¶¶ 5-6, at 2. Because the parties are citizens of different states, complete diversity exists between the parties. Furthermore, more than the amount-in-controversy requirement of $75,000 is in dispute; the Raels filed a complaint in state court alleging damages of $1,000,000.00 against Dairyland. See New Mexico State District Court Complaint at 9. Also, the Defendants acknowledge that the insurance policy at issue provides $100,000.00 per person coverage and $200,000.00 per occurrence coverage. See Rael Memorandum at 4.

The Court held a hearing on this motion on October 27, 2005. Dairyland explained that the New Mexico State District Court dismissed the state case upon Dairyland's motion, rendering moot the Declaratory Judgment Act and abstention grounds in the Defendants' instant motion. See Transcript of Hearing at 5:5-6:3 (taken October 27, 2005).[4] Dairyland also informed the Court that it has settled possible claims with Tollardo, Maestas, and Martinez. See id. at 6:9-16; Order at 1, filed August 19, 2005 (Doc. 46); Letter from Rudolph A. Lucero at 1 (executed August 17, 2005). Even though Dairyland represented its belief that these three people were not indispensable parties in the first place, Dairyland contended that the indispensable party issue is nevertheless moot. See Transcript of Hearing at 6:9-16. At the hearing, the Defendants also asked the Court to consider certifying this matter to the New Mexico Supreme Court. See id. at 39:18-40:20.

## ANALYSIS

The Court concludes that it should not dismiss this action. The Defendants urge the Court to dismiss this case on three grounds.

First, the Defendants maintain that Dairyland failed to join Maestas, Rael, and Martinez as indispensable parties to this action. This ground, however, is now moot because Dairyland has settled its claims with each of these potential parties. See id. at 6:9-16. Indeed, the Defendants admitted in their Response to Dairyland's motion for summary judgment that "the issue concerning indispensable parties appears moot" in light of the settlements. Rael's Response to Dairyland's Motion for Summary Judgment ("Rael Response") at 3, filed September 12, 2005 (Doc. 49).

Second, the Defendants ask the Court to abstain from hearing the federal case because they

---

[4] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

filed an action against Dairyland in the New Mexico State District Court. The state case involved the same uninsured motorist policy as in this case, and the Defendants maintain that the state court can resolve all of the issues of state law raised in this matter. See Rael Memorandum at 24-25. The Defendants' abstention ground is moot, however, because the New Mexico State District Court dismissed the state action. See Transcript of Hearing at 5:5-6:3. There is no case from which the Court could abstain. Without a state court case currently proceeding, the Court should not abstain from exercising its jurisdiction over this case.

The Defendants also assert that the Court should decline to exercise its jurisdiction under the Declaratory Judgment Act. As both the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have recognized, the court has "'unique and substantial discretion' in determining whether to declare the rights of litigants when duplicative state proceedings exist." United States v. City of Las Cruces, 289 F.3d 1170, 1179-80 (10th Cir. 2002)(quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286-87 (1995)). "[D]istrict courts are 'under no compulsion' to grant declaratory relief but have discretion to do so." Id. at 1180 (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 494-95 (1942)). The Tenth Circuit has adopted five factors that district courts should weigh in considering whether to allow a Declaratory Judgment Act case to go forward:

> "[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."

Id. at 1187 (quoting State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)).

The Court begins its analysis of the five Mhoon factors by noting that this action would settle

the controversy because there are no other parties that need to be joined to resolve the Defendants' claim under the uninsured motorist policy. The only other possible parties identified by the litigants, Tollardo, Maestas, and Rael, are no longer in play because Dairyland settled with them. See Transcript of Hearing at 6:9-16. By declining jurisdiction, the Court would not be avoiding the prospect of piecemeal litigation because this is the only potential action that exists following the dismissal of the state court action. See id. at 5:5-6:3. The current action will also clarify the legal relations at issue because it will determine whether Dairyland owes the Raels money under the uninsured motorist policy. These two factors weigh in opposition to the Defendants' motion.

Furthermore, the Defendants do not provide any evidence that Dairyland has engaged in procedural fencing. Two facts, however, support an argument that Dairyland filed this suit to start a race to res judicata: (i) the Defendants wrote a letter to Dairyland dated September 27, 2004, that threatened suit if the claims were not settled by October 4, 2004; and (ii) Dairyland filed this action four days later. See Rael Memorandum at 5-6. While Dairyland points out that it filed its federal suit twenty-seven days before the Defendants filed their state suit, which is a longer period of time than in other cases where courts have found procedural fencing, see St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1170 (10th Cir. 1995)(finding procedural fencing in part because the plaintiff filed suit one day before the date in which the defendant had promised to file his suit), the fact remains that Dairyland entered federal court after allegedly receiving the Defendants' letter notifying it of the Defendants' intent to sue. See Rael Memorandum at 5-6. This factor thus leans slightly toward granting the Defendants' motion.

As for the remaining factors, the Court fails to see a possibility of increased friction between federal and state courts if it exercises jurisdiction because the only state court proceeding involving

this matter has been dismissed. See Transcript of Hearing at 5:5-6:3. As such, there is no danger that this Court will encroach upon the traditional role of state courts in our federal system. See United States v. City of Las Cruces, 289 F.3d at 1190 (agreeing with a federal district court that continuing with a declaratory judgment action "could encroach upon the state courts' traditional role as arbiter of water rights disputes"). Finally, there is no state remedy that is better or more effective because the only related state action has been dismissed. See Transcript of Hearing at 5:5-6:3. The final two Mhoon factors therefore tilt against granting the Defendants' motion.

Weighing these factors, the Court finds four factors against granting the Defendants' motion and one favoring a dismissal of this action. The Court determines that the possibility that procedural fencing might have occurred does not outweigh the fact that there is no longer a state court action potentially deciding the same issue. Also, this case will settle the controversy and clarify the legal relations at issue. In light of this balancing, the Court will not decline to exercise its jurisdiction under the Declaratory Judgment Act.

At the hearing, the Defendants requested that the Court consider certifying the uninsured motorist policy issue to the New Mexico Supreme Court. See id. at 39:18-40:20. In deciding state substantiative law, federal courts have the option of deciding what a state court would do, see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), or the court can certify the question to the state appellate court for review, see, e.g., Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)(explaining that certification "in a given case rests in the sound discretion of the federal court"); Allstate v. Stone, 116 N.M. 464, 465, 863 P.2d 1085, 1086 (1993)("This matter comes before us by way of certification from the United States District Court for the District of New Mexico[.]"). Pursuant to NMSA 1978, § 39-7-3 (2003), and Rule 12-607, NMRA (2003), the

Supreme Court of New Mexico may answer questions that the federal district court certifies if the questions involve propositions of New Mexico law determinative of the cause before the certifying court and if there are no controlling precedents from New Mexico appellate courts.  See Swink v. Fingado, 115 N.M. 275, 276, 850 P.2d 978, 979 n.1 (1993).

While the uninsured motorist coverage issue is determinative of the cause before the Court, there are sufficient precedents from the New Mexico Court of Appeals and the United States Court of Appeals for the Tenth Circuit for the Court to rule in this matter, including: (i) State Farm Mut. Auto. Ins. Co. v. Blystra, 86 F.3d 1007 (10th Cir. 1996); (ii) Britt v. Phoenix Indem. Ins. Co., 120 N.M. 813, 907 P.2d 994 (1995); (iii) Farmers Ins. Co. v. Sedillo, 129 N.M. 674, 11 P.3d 1236 (Ct. App. 2000); and (iv) Barncastle v. Am. Nat'l Prop. & Cas. Cos., 129 N.M. 672, 11 P.3d 1234 (Ct. App. 2000).  These cases illuminate the law on uninsured motorist policies enough for the Court to examine whether the Defendants are entitled to proceeds resulting from the violence of July 24, 2003.  Given that the Court finds that two grounds of the Defendants' motion are moot, and the remaining basis does not merit a dismissal, the Court will deny the Defendants' motion.

**IT IS ORDERED** that the Motion to Dismiss is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Rudolph A. Lucero
Kelsey Diane Green
Miller Stratvert, P.A.
Albuquerque, New Mexico

> *Attorneys for Plaintiff/Defendant/Cross-defendant/Cross-claimant Dairyland Insurance Company.*

Larry D. Beall
Kelley J Friedman
Beall & Biehler
Albuquerque, New Mexico

> *Attorneys for Plaintiff/Counter-defendant Hartford Insurance Company of the Midwest*

Chris Lucero Jr.
Chris Lucero Jr. & Assoc., P.A.
Albuquerque, New Mexico

> *Attorney for Defendant Red Eagle Rael*

Bruce S. McDonald
Law Offices of Bruce S. McDonald,
Albuquerque, New Mexico

-- and --

Kevin A. Zangara
Taos, New Mexico

> *Attorneys for Defendant/Counter-claimant/Cross-claimant/Cross-defendant Estate of Eric Tollardo, Defendant/Counter-claimant/Cross-claimant/Cross-defendant Samuel L. Valdez, Defendant/Counter-claimant/Cross-claimant/Cross-defendant Rose Valdez*